OPINION OF THE COURT
Memorandum.
On the court’s own motion, the appeals are consolidated for purposes of disposition.
Order entered October 1, 2002 unanimously reversed without costs, plaintiffs motion for summary judgment granted on the issue of liability only and matter remanded to the court below for an assessment of damages (action No. 1).
Order entered November 8, 2002 unanimously reversed without costs, defendant’s motion for summary judgment denied and, upon a search of the record, summary judgment granted to plaintiff on the issue of liability only and matter remanded to the court below for an assessment of damages (action No. 2).
Plaintiffs commenced actions pursuant to the Telephone Consumer Protection Act (TCPA) (47 USC § 227 [b] [3]), complaining that defendants in each action transmitted unsolicited advertisements to their facsimile (fax) machines without their authorization, in violation of the TCPA.
The TCPA provides, in pertinent part, that “It shall be unlawful for any person within the United States ... to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine” (47 USC § 227 [b] [1] [C]).
The TCPA (47 USC § 227 [a] [4]) defines “unsolicited advertisement” as “any material advertising the commercial availability or quality of any property, goods, or services which *7 is transmitted to any person without that person’s prior express invitation or permission.”
Plaintiffs each sought treble damages of $1,500 as provided at 47 USC § 227 (b) (3) on the grounds that the transmissions were “willful or knowing.” Plaintiff in action No. 1 and defendant in action No. 2 each moved for summary judgment. The courts below dismissed both actions on the ground that the TCPA violates the First Amendment to the US Constitution.
The order in action No. 1 (193 Misc 2d 449 [2002]) must be reversed, plaintiffs motion for summary judgment granted on the issue of liability and the matter remanded to the court below for an assessment of damages. The fax at issue (although of very poor transmission quality) clearly falls within the TC-PA’s definition of an “unsolicited advertisement.” The fax, sent by defendant Fax.com, Inc., on behalf of defendant Enine, Inc., includes a “strong buy” recommendation for the stock described therein, indicates that Enine, Inc., recommended the stock, gives the stock’s price, “Reasons To Own The Stock” and a contact number. The fax also gives subscription information for future issues of the “newsletter.” It therefore proposes a commercial transaction, for the stock, the newsletter or both, and falls within the ambit of the statute, as the court below properly concluded.
The order in Bonime (action No. 2), dismissing the action, must also be reversed. The fax at issue has the effect and purpose of advertising, albeit indirectly, defendant’s services. Its essential purpose is to propose a commercial transaction, and the TCPA prohibits such unsolicited faxes. We find as a matter of law that the fax falls within the ambit of the TCPA’s enforcement provisions as it “advertises] the commercial availability or quality of. . . services” within the meaning of 47 USC § 227 (a) (4). It mentions defendant’s company name, connecting defendant to the contents of the fax, and invites calls for further information. The approach may be less direct than “buy Brand X,” but it has the purpose and effect of influencing fax recipients to buy services, here, the implementation of ISO 9000 (see Fashion Boutique of Short Hills, Inc. v Fendi USA, Inc., 314 F3d 48, 56 [2d Cir 2002] [discussing meaning of “advertising” in trademark enforcement context]). Defendant’s name is before the recipient, and the only logical explanation of this fact is that defendant is somehow associated with ISO 9000, about which defendant expresses positive views. The inescapable conclusion is that the recipient should act by calling for “information.” *8 Certainly, the very fact that the recipient’s attention is called to the existence of this new, improved system “advertis[es] the commercial availability or quality of . . . services” (47 USC § 227 [a] [4]). While there is a fine line between such a fax and one that purely provides information, we hold that the subject fax pitches a product or service under the guise of providing information about it, and therefore proposes a commercial transaction, notwithstanding that the proposal in so many words would occur when the fax recipient calls the sender. This is known in the field as direct response marketing. Moreover, as plaintiff notes, practically any advertising fax could be reformed to simply describe a product or service and provide a contact number, allowing almost any advertiser to circumvent the clear purpose of the TCPA prevention of cost shifting from advertisers to unwilling fax recipients and preventing deprivation of use of their own fax machines by barring unsolicited commercial advertising faxes. For these reasons, we hold that the fax in action No. 2 falls within the ambit of the statute, and defendant’s motion for summary judgment should have been denied.
In reaching this determination we do not limit our scrutiny to the four corners of the fax. Rather, such factors as who the sender is, as well as his motives, purposes and intentions for sending the fax, are all relevant. It is possible that faxes textually conveying the same ideas or even faxes that are facially identical could fall inside or outside the TCPA’s ambit depending upon considerations outside the content of the fax itself, such as the identity of the sender as a commercial or professional entity (versus, for example, a public interest organization or political entity) and the nature of the sender’s business (compare, e.g., In re Primus, 436 US 412 [1978] [client solicitation letter sent on behalf of a civil liberties organization seeking plaintiffs for a civil liberties lawsuit was not solicitation for pecuniary gain in violation of state statute], with Florida Bar v Went For It, Inc., 515 US 618, 634 [1995] [upholding 30-day ban on direct mail solicitation of accident victims and noting the “many dimensions” that speech by professionals may have]). A civil liberties organization and a personal injury attorney might conceivably send identical communications that the recipient has legal rights that the communicating entity wishes to uphold; the former is entitled to the full ambit of First Amendment protection (Primus, 436 US at 431), while the latter may be regulated as commercial speech, as discussed below (Florida Bar, 515 US at 635). Moreover, a fax depicting a *9 car with its brand name may be considered a provision of information if sent by one’s college-age child (even though a commercial transaction is almost certainly being proposed), but an unsolicited advertisement if sent by an auto dealership.
Moreover, upon a search of the record (Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106 [1984]), we grant summary judgment to plaintiff in action No. 2 upon liability only, and remand the matter to the court below for a determination of damages.
However, it should be noted that plaintiff in action No. 2 seeks, in part, equitable relief in the form of an injunction barring defendant from sending further faxes. The remedies available pursuant to the TCPA are limited to those “otherwise permitted by the laws or rules of court of a State” (47 USC § 227 [b] [3]), and plaintiffs forum, the New York City Civil Court, does not have equity jurisdiction to grant, as a form of primary relief, the injunction plaintiff seeks (CCA 202).
Turning to the question of the statute’s constitutionality, the parties in both actions agree that the TCPA restricts commercial speech, i.e., “expression related solely to the economic interests of the speaker and its audience” (Central Hudson Gas & Elec. Corp. v Public Serv. Commn. of N.Y., 447 US 557, 561 [1980]), specifically “unsolicited advertisement,” as defined in the TCPA (47 USC § 227 [a] [4]).
The Supreme Court has recognized
“the ‘commonsense’ distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech . . . The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation” (Central Hudson, 447 US at 562-563 [internal citations and quotations marks omitted]).
The result is a four-part test, to be employed to analyze the constitutionality of restrictions upon commercial speech:
“At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not *10 be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest” (id. at 566).
To meet this burden, the state (or, if the issue arises in private litigation, the party seeking to uphold the restriction) (Bolger v Youngs Drug Prods. Corp., 463 US 60, 71 n 20 [1983]) “must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree” (Florida Bar, 515 US at 626, quoting Edenfield v Fane, 507 US 761, 770-771 [1993]).
Defendants and both courts below relied upon the subsequently reversed Missouri ex rel. Nixon v American Blast Fax, Inc. (196 F Supp 2d 920 [D Mo 2002], revd 323 F3d 649 [8th Cir 2003]), equating the TCPA provisions at issue with the outright bans on designated content of commercial speech invalidated in recent Supreme Court cases including Rubin v Coors Brewing Co. (514 US 476 [1995]), 44 Liquormart, Inc. v Rhode Island (517 US 484 [1996]), Lorillard Tobacco Co. v Reilly (533 US 525 [2001]), and, most recently, Thompson v Western States Med. Ctr. (535 US 357 [2002]; see Nixon, 196 F Supp 2d at 927; Rudgayzer & Gratt v Enine, Inc., 193 Misc 2d 449, 451 [Civ Ct, Kings County 2002]). We do not find this reasoning persuasive, and we note that the United States Court of Appeals for the Eighth Circuit, reversing Nixon (323 F3d 649 [2003]), also did not accept this argument.
The restrictions upon commercial speech at issue in the foregoing Supreme Court cases barred the very utterance of presumptively true product-related information. In contrast, the TCPA does not ban any advertising content at all. It simply forbids its transmission by fax to an unwilling recipient, while leaving open to the advertiser all other means of conveying the information (Nixon, 323 F3d at 659; see also Florida Bar, 515 US 618, 633-634 [1995] [noting, in favor of upholding a 30-day ban on direct solicitation of accident victims, the wide variety of communication channels left open to lawyers seeking clients]). Furthermore, and significantly, the evils the TCPA seeks to address, shifting of advertising costs to recipients and depriving them of use of their own equipment, are brought about by the act of the fax transmission itself, not by some posited remote result of that transmission (Nixon, 323 F3d at 660).
*11 While consistently invalidating bans on commercial speech intended to indirectly address some more remote issue, the Supreme Court has nevertheless continued to apply the Central Hudson analysis in evaluating the constitutionality of restrictions upon commercial speech. Applying the factors noted in Central Hudson and reaffirmed in its progeny, we find that the TCPA restrictions upon transmission of unsolicited advertisements by facsimile are constitutional since the statute addresses a substantial government interest, materially advances that interest, and is not more extensive than necessary to serve that interest (Central Hudson, 447 US at 566).
All concerned agree that the government interests at stake, as expressed by plaintiffs in these actions (see generally Eden-field, 507 US at 770), are preventing cost shifting from advertisers to unwilling recipients of their materials and preventing fax owners from being deprived of the use of their property by incoming advertising faxes. Like the direct client solicitations at issue in Florida Bar (515 US 618 [1995]), this harm is accomplished through the very act of transmitting such a fax. The regulation at issue here, like the solicitation ban in Florida Bar, directly addresses this harm (see Nixon, 323 F3d at 660).
Plaintiffs have met their burden of establishing that the interest in addressing the stated harms is substantial (Central Hudson, 447 US at 564). They submitted evidence that in considering the provisions at issue here, Congress received testimony both that the numbers of such unwanted advertising faxes was substantially increasing, and that recipients must pay for paper and toner, and incur other costs, in receiving the unwanted advertising. While the testimony indicated that this cost could be as low as three cents per page, any appropriation of another’s property without consent is abhorrent to the American idea of property rights regardless of the value of the property involved (see Phillips v Washington Legal Found., 524 US 156, 169-170 [1998] [“We have never held that a physical item is not ‘property’ simply because it lacks a positive economic or market value”]; Loretto v Teleprompter Manhattan CATV Corp., 458 US 419 [1982] [permanent physical occupation of property, no matter how small in area or minimal in economic impact, is a taking]; hearing before Subcomm on Telecom & Fin of House Energy & Commerce Comm [HR 1304/HR 1305], 102nd Cong, 1st Sess 2 [1991]). Congress also noted the centrality of the fax machine to modern business communications (report to accompany HR 1304, HR Rep No. 102-317, at 10). While defen *12 dants in both actions dismiss these considerations as minor and argue that Congress gave them little consideration prior to enacting the TCPA fax provisions, the First Amendment does not require the compilation of exhaustive statistical and empirical reports to establish a substantial interest; “restrictions based solely on history, consensus and ‘simple common sense’ ” have been upheld (see Florida Bar, 515 US at 628; Nixon, 323 F3d at 656). The shifting of costs from fax advertisers to recipients and deprivation of use of their property, at whatever level, is unavoidable, and Congress was entitled to forbid this interference based on the factors cited above.
Congress was also entitled to find that unsolicited advertising faxes were responsible for the vast majority of the offenses to its cited interests, and thus to restrict the scope of regulation to such faxes. As in the present case, the United States Court of Appeals for the Ninth Circuit noted, in its opinion upholding the fax provisions of the TCPA, that the parties challenging the statute in the case before it
“had not disputed that unsolicited commercial fax solicitations are responsible for the bulk of advertising cost shifting. Thus, banning them is a reasonable means to achieve Congress’s goal of reducing cost shifting. The First Amendment does not require Congress to forgo addressing the problem at all unless it completely eliminates cost shifting” (Destination Ventures, Ltd. v Federal Communications Commn., 46 F3d 54, 56 [9th Cir 1995], citing United States v Edge Broadcasting Co., 509 US 418 [1993]).
The Eighth Circuit expressed its agreement with this analysis as well (Nixon, 323 F3d at 658).
The fact that advertising faxes constitute the bulk of unsolicited faxes also distinguishes the present case from City of Cincinnati v Discovery Network, Inc. (507 US 410 [1993]), which defendants argue mandates a finding that the TCPA is unconstitutional. The ordinance at issue in Discovery Network would have removed roughly 60 of the estimated 2,000 newsracks in the City of Cincinnati, and thus could not by any means be said to materially advance the city’s goals of improving esthetics and reducing sidewalk clutter. In the arena of unsolicited faxes, by contrast, all evidence to date indicates that a ban on advertising faxes in fact materially advances the cost shifting and property interests cited by Congress, and no evidence has yet emerged of an onslaught of unsolicited nonadvertising faxes, jokes, surveys, *13 free giveaways or political campaign faxes, that would cause the TCPA’s ban on unsolicited advertisements to be so insignificant as to render the statute unconstitutional.
Finally, the TCPA fax provisions are not more extensive than necessary to advance the interests at stake, in that they are a “reasonable fit” with the legislative end of preventing cost shifting and preemption of equipment use (see generally Board of Trustees of State Univ. of N.Y. v Fox, 492 US 469, 480 [1989]). Plaintiffs in both actions have “demonstrate^] that the harms [they] recite [ ] are real and that [the] restriction will in fact alleviate them to a material degree” (Florida Bar, 515 US at 626, quoting Eden field, 507 US at 770-771). This is all that the First Amendment requires.
Nor is there any requirement in the Supreme Court’s most recent holdings on this subject that the least restrictive means of regulation be determined (Nixon, 323 F3d at 658-659). The Supreme Court stated in 2001 in Lorillard that “We have made it clear that ‘the least restrictive means’ is not the standard; instead, the case law requires a reasonable fit between the legislature’s ends and the means chosen to accomplish those ends ... a means narrowly tailored to achieve the desired objective” (533 US at 556 [internal quotations marks omitted]). It subsequently reaffirmed this approach in Western States (535 US 357 [2002]). In analyzing its recent jurisprudence in Western States, the Court noted that there were substantially (as opposed to somewhat) less restrictive alternatives to the legislation at issue in those cases (as in Western States itself) (see 535 US at 371-372). Many of these available means were not speech related at all, while the regulations at issue in all of the prior cases completely foreclosed the speech involved.
Thus, the Court’s caveat in Fox (492 US at 479) that “almost all of the restrictions disallowed under Central Hudson’s [final] prong have been substantially excessive, disregarding far less restrictive and more precise means,” continues to apply to the Court’s more recent rulings, and the mere existence of some less restrictive means of advancing the interests at stake will not invalidate the means that Congress chose (Fox, 492 US at 479 [internal quotation marks omitted]).
In the present cases, defendants suggest that Congress could have enacted a less restrictive statute, offering as a model New York General Business Law § 396-aa (which prohibits commercial faxes only at certain times or above certain lengths), or that Congress might have mandated creation of a “do not fax” *14 list, or even left the industry to self-regulation, instead of banning unsolicited commercial faxing altogether. However, it is far from obvious that these measures would have effectively or even more precisely addressed the interests Congress identified in enacting the legislation. They do not address the invasion of fax owners’ property interests as directly or precisely as does the TCPA. Furthermore, although banned from using fax transmission, advertisers have a myriad of other possibilities for disseminating their messages. The means Congress chose are a “reasonable fit” with the end sought and do not offend the First Amendment (Lorillard, 533 US at 556).
Plaintiffs in both actions established defendants violated the TCPA by transmitting an unsolicited advertising fax to each plaintiffs fax machine. (We note that neither defendant in action No. 1 raised an issue that it was an improper defendant although Fax.com sent the fax on behalf of Enine, Inc.) Moreover, although it was not the actual advertiser, defendant Fax.com, Inc. has been cited in a Federal Communications Commission enforcement proceeding as having the requisite “high degree of involvement in the unlawful activity [of transmitting faxes in violation of the TCPA]” to hold it liable under the TCPA (.Kaufman v ACS Sys., 110 Cal App 4th 886, 911, 2 Cal Rptr 296, 316 [2003] [internal quotation marks omitted]).
Both actions must be remanded to the courts below to determine damages, including whether the violations were willful or knowing within the meaning of 47 USC § 227 (b) (3) (see generally Texas v American Blast Fax, Inc., 164 F Supp 2d 892 [2001]; Kaplan v First City Mtge., 183 Misc 2d 24 [Rochester City Ct 1999]). The Federal District Court in American Blast Fax, construing “willful or knowing” in the context of the TCPA, noted in that case:
“The Federal Communications Commission has interpreted ‘willful or knowing’ under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute . . . The Court finds this is the proper standard for a finding of willful or knowing conduct under the TCPA’s treble damages provision” (164 F Supp 2d at 899 [citation omitted]; see also Matter of Intercambio, Inc., 3 FCCR 7247 [1988]).
The Kaplan court further noted that imposition of treble damages is discretionary (47 USC § 227 [b] [3]).
*15 The nature of the defendants’ violations, although argued upon the motions below, was not discussed upon this appeal, and there is not enough evidence in the record for this court to determine whether the conduct involved here rises to the level of “willful or knowing” on the part of any of the defendants. Accordingly, the matters are remanded to the respective courts below for a finding as to the nature of the violation and an assessment of damages in accordance therewith (see CPLR 3212 [c]).
Finally we note that the question of whether the TCPA has preempted General Business Law § 396-aa in whole or in part is not directly at issue in either lawsuit. Therefore, we do not pass upon it.
Aronin, J.P, Patterson and Golia, JJ., concur.